## MANLEY VS. MANLEY.

1. DIVORCE. — JURISDICTION. — The circuit courts of this state have jurisdiction, under the revised statutes, to make decrees divorcing parties from the bonds of matrimony, although the guilty party has never resided in this state, and although the acts constituting the cause for divorce were committed within a foreign jurisdiction. *Hubbell v. Hubbell*, 3 Wis., 662; *Gleason v. Gleason*, 4 id., 64; *Shafer v. Bushnell*, 24 id., 372.

(4 Chand., 96.)

APPEAL from the Circuit Court for *Columbia* County.

The case is stated in the opinion of the court.

*J. G. Knapp*, for appellant, cited 1 Smith Ch. Pr., 154; Daniels Ch., 514; *Mower v. Mower*, 1 Bro. Ch., 388; *Oglevie v. Hearn*, 13 Ves., 563; *Henderson v. Meggs*, 2 Bro. Ch., 127; *James v. Dore*, 1 Dick., 63; *Lawlins v. Lawlins*, 6 Monr., 70; *Brown v. Wood*, 6 J. J. Marsh, 11; *Jermain v. Langdon*, 8 Paige, 41; 3 Eccl. Rep., 406, 415, 416, 421, 428, 308; 8 Mass., 383; 4 Eccl. Rep., 534; 2 Blackf., 207; 1 Edward's Ch., 40; 10 Ohio, 27.

KNOWLTON, J.   The appellant filed his bill for divorce, *a vinculo* on the 5th day of February, 1851, in the circuit court of Columbia county.   On the 25th a subpoena was issued, returnable on the third Wednesday of March thereafter.   On the 19th of the month last named, the writ was returned endorsed by the sheriff "defendant not found."   An order was signed by the judge of the circuit court of Columbia county for publication of notice for an appearance upon the 1st day of July,

1851. This notice was duly published in the *River Times*, a weekly newspaper published in the county above named. Of this publication the requisite proof was made. On the 26th September, 1851, the testimony on the part of the plaintiff was taken in open court, and the cause set down for hearing on the bill and testimony, and thereupon the court ordered said bill dismissed at the costs of the complainant, for the reason that the said circuit court had no jurisdiction over the person of the defendant, she never having been a resident of this state. From this decision of the circuit court the complainant appealed to this court.

The only question presented upon this appeal for consideration is, whether the circuit courts of this state can legally, by decree, dissolve the matrimonial tie in cases where the defendant is not and never has been a resident of this state, notwithstanding all the requirements of the statute as to such cases have been complied with. A majority of this court are of opinion that such decree can properly be made. I take it that a decree *a vinculo* operates upon and directly affects the marriage contract in its solemnizing form. And that whilst it thus acts and operates directly, it indirectly affects the parties previously bound thereby. This is the precise effect of a judgment at law when the estate of a nonresident is attached, as an incipient step in the case, the owner of which has never been served with process, appeared or brought into court in any way other than by the mere newspaper publication of notice to him. Yet it has been held again and again that such judgments were valid and binding as to the property attached, although sufficient to entirely satisfy the contract debt. Such a judgment, therefore, directly affects and operates upon both the contract and property.

If courts possess the power to enforce a contract under such circumstances to complete satisfaction by divesting the defendant of his property, having in it far more intrinsic value than lies in a worthless husband or wife, why may not a court can-

cel or annul the obligation of a contract which has been wantonly violated by the party defendant? It may be answered that courts may thus cancel a contract when the defendant has appeared in court and unsuccessfully defended against the alleged violation, or without collusion with the plaintiff, acknowledged such allegation to be true, or voluntarily neglected so to do, after actual notice of the pending of such suit by the service of process, but that the court possesses no such power unless some one of these things occur.

If this position be sound, it must be so for the reason that the defendant has had no day in court or no opportunity to defend against such allegation, or in other words, to show that he or she has not been guilty of a violation of the contract in question. This would be going a little too far, however; because, if this reasoning be adopted as correct, it would completely overthrow the doctrine established in attachment cases to which I have before alluded. For I affirm that there is at least as strong a presumption that the contract has been discharged by payment, and that the defendant would have proved such payment had he been served with process, as there is that in the other, the contract has not been violated; proof of liability is requisite in one case, and violation of the contract in the other. Enforcing or annulling a contract requires the exercise of power. Power is therefore an attribute of sole individualty. The manner of getting this power into activity is another and quite different thing. Each must have a fountain head, which must come from the same or different sources. Where then does the power of a court emanate from? The answer obviously is, from sovereignty or government. The same sovereignty declares or fixes the means by which that power can be exercised, and the manner of so doing, and no other has any right to prescribe any rules in relation thereto, or interfere therewith. This is said with the qualification that no state of the federal government can act upon a matter which is under the entire and exclusive control of the last named sovereignty. As the

state of Wisconsin in its sovereign capacity has the inherent power to declare how, in what manner, and under what circumstances its courts may or shall exercise the powers with which they are vested, it follows that it is legal to exercise those powers in the manner in which the sovereignty has declared it may be done. Whether in this case, there had or had not been a violation of the solemnized marriage contract, is not the question now before this court. That is of course a question of fact to be decided according to the forms of law by the circuit court. The error complained of is, that the court below refused to exercise its legitimate power; but instead of so doing, turned the plaintiff out of court without a hearing. Of this, I think, he has just right to complain. Much might be said in support of the policy of our laws upon the subject of divorce, but it is quite unnecessary.

That policy has been settled by the proper department, the legislature. Courts should at all times be cautious how they act, lest they encroach upon the exercise of powers properly belonging to some other branch of government.

The decree of the circuit court must be reversed, and the cause remanded for further proceedings, consistent with this opinion.

Decree reversed.